**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **KIMBERLY STARLING,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>**ANGEL L. REYES & ASSOCIATES, P.C. d/b/a REYES BROWNE LAW,**<br><br>*Defendant.* | Case No. 3:26-cv-3233<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**<u>CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL</u>**

Plaintiff Kimberly Starling ("Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Angel L. Reyes & Associates, P.C., d/b/a Reyes Browne Law ("Reyes" or "Defendant"), and alleges as follows:

1. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations

was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, she can add her number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')...Private suits can seek either monetary or injunctive relief. *Id.*..This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect her own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3. Texas has independently outlawed the conduct at issue here. For more than a century, Texas has prohibited barratry, the solicitation of legal employment. Section 38.12 of the Texas Penal Code makes it a criminal offence for a person, with intent to obtain an economic benefit, to solicit employment by telephone, to pay another person to solicit employment, or, as a licensed professional, to knowingly accept employment resulting from such a solicitation. *See* TEX. PENAL CODE § 38.12(a)(2), (a)(4), (a)(6), (b)(1), (b)(3), (f).

4. The Texas Legislature has given the person who is unlawfully solicited a private civil remedy. TEX. GOV'T CODE § 82.0651(c) permits a person who was solicited by conduct violating Section 38.12(a) or (b) of the Penal Code, or Rule 7.03 of the Texas Disciplinary Rules

of Professional Conduct, but who did not enter into a contract as a result of that conduct, to file a civil action against any person who committed barratry. Effective September 1, 2025, the Legislature increased the statutory penalty recoverable under that provision from $10,000 to $50,000 as to each person who engaged in barratry. Act of May 20, 2025, 89th Leg., R.S., H.B. 4325, § 1 (amending TEX. GOV'T CODE § 82.0651(d)(1)). That amendment applies to any action, like this one, filed on or after September 1, 2025. *Id.* § 2.

5. Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA, the Texas Business and Commerce Code, and Texas's prohibition on barratry. Defendant is a personal injury law firm that obtains clients by hiring lead generators that blast out *en masse* artificial and prerecorded voice calls, including calls to consumers whose numbers are listed on the National Do Not Call Registry, using spoofed and fictitious caller identification, and using fictitious trade names. Defendant then takes the transferred consumer, sends a retainer agreement, and, if the consumer signs, keeps a contingent fee. That is precisely what happened to Plaintiff, and, on information and belief, to a large number of other Texans.

**PARTIES**

6. Plaintiff Kimberly Starling is an individual residing in Tarrant County, Texas.

7. Defendant Angel L. Reyes & Associates, P.C., d/b/a Reyes Browne Law, is a Texas professional corporation with its principal place of business at 8222 Douglas Avenue, Suite 400, Dallas, Texas 75225, in Dallas County, Texas. Defendant is a personal injury law firm.

**JURISDICTION AND VENUE**

8. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq.*

9. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because those claims arise from the same telephone calls and text messages that give rise to Plaintiff's federal claims and thus form part of the same case or controversy.

10. This Court has personal jurisdiction over Defendant because Defendant is a Texas professional corporation that maintains its principal place of business in this District and Division, and because the conduct at issue was directed into Texas.

11. Venue is proper under 28 U.S.C. § 1391(b)(1) because Defendant resides in Dallas County, which is within this District and this Division, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District, including the placement of, and the solicitation of legal employment through, the calls and text messages at issue.

## BACKGROUND

### A. The TCPA Prohibits Calls to Numbers on the National Do Not Call Registry.

12. The TCPA prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

13. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

14. A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

15. The TCPA and its implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers on the Registry and provide a private right of

action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**B. The TCPA Prohibits Artificial and Prerecorded Voice Calls.**

16. The TCPA makes it unlawful to initiate any telephone call to a cellular telephone number using an artificial or prerecorded voice, other than for emergency purposes, without the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii).

17. The TCPA likewise makes it unlawful to initiate a telephone call to a residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(B).

18. Where an artificial or prerecorded voice call introduces an advertisement or constitutes telemarketing, the caller must have obtained the called party's prior express *written* consent. 47 C.F.R. § 64.1200(a)(2), (a)(3).

19. "Prior express written consent" requires a written agreement, bearing the signature of the called party, that clearly and conspicuously authorizes the seller to deliver advertisements or telemarketing messages to a specified telephone number using an automatic telephone dialing system or an artificial or prerecorded voice, and that discloses that the called party is not required to sign the agreement as a condition of purchasing any goods or services. 47 C.F.R. § 64.1200(f)(9).

20. Consent must exist *before* the call is placed. A purported authorization solicited during, or generated after, an unlawful call cannot retroactively supply the prior express consent that the statute requires.

21. The TCPA provides a private right of action for these violations, permitting recovery of $500 for each violation, which the Court may treble if the violation was willful or knowing. 47 U.S.C. § 227(b)(3).

**C. The TCPA Also Requires Telemarketers to Transmit Caller Identification Information Including the Telemarketer's Name.**

22. The TCPA requires any "person or entity that engages in telemarketing" to "transmit caller identification information." 47 C.F.R. § 64.1601(e).

23. The relevant regulation defines "caller identification information" as "either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer." 47 C.F.R. § 64.1601(e)(1).

24. The regulation further requires that the telephone number transmitted permit an individual to make a do-not-call request during regular business hours. 47 C.F.R. § 64.1601(e)(1).

25. A violation of this subsection of the TCPA is enforceable under the private right of action provided for under 47 U.S.C. § 227(c)(5). *Dobronski v. Selectquote Ins. Servs.*, No. 2:23-CV-12597, 2025 WL 900439, at *3 (E.D. Mich. Mar. 25, 2025).

**D. The Texas Business and Commerce Code**

26. Realizing the particular harm to Texas residents that unsolicited telemarketing calls to them poses, the Texas Legislature passed Section 302.101 of the Texas Business and Commerce Code, which requires all "sellers" or "salespersons" making "telephone solicitations" inducing a person to "purchase, rent, claim, or receive an item," to register as such with the Texas Secretary of State. TEX. BUS. & COM. CODE §§ 302.001; 302.101.

27. A "telephone solicitation" under Chapter 302 includes not only voice calls but also the transmission of a text or graphic message or of an image. *Id.* § 302.001(7) (as amended by Act of May 24, 2025, 89th Leg., R.S., S.B. 140, eff. Sept. 1, 2025). Under Chapter 304, a "telephone call" likewise includes both voice calls and text message calls, including visual messages. *Id.* § 304.002(10).

28. The burden of proof lies on Defendant to show it registered each business location to prove its licensure or to prove an exemption. *Id.* § 302.051.

29. The solicitation of legal representation is not a product or service for which there is an exemption to the Code. *Id.* §§ 302.051-.060.

30. A person who violates Chapter 302 is liable for a civil penalty of not more than $5,000 for each violation, plus the reasonable costs of prosecuting the action. *Id.* § 302.302. A violation of Chapter 302 is additionally a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17. *Id.* § 302.303.

31. Separately, Section 305.053 of the Texas Business and Commerce Code provides that a person who receives a communication that violates 47 U.S.C. § 227 or a regulation adopted under that provision may bring an action in Texas against the person who originates the communication for an injunction, for damages, or for both. A prevailing plaintiff is entitled to the greater of $500 per violation or actual damages, and the Court may increase that award to as much as $1,500 per violation if the violation was committed knowingly or intentionally. *Id.* § 305.053(a)-(c).

**E. Texas Prohibits Barratry, Including the Solicitation of Legal Employment by Telephone.**

32. Section 38.12(a) of the Texas Penal Code provides that a person commits an offense if, with intent to obtain an economic benefit, the person solicits employment, in person or by telephone, for the person or for another; pays or gives or offers to pay or give a person money or anything of value to solicit employment; or accepts or agrees to accept money or anything of value to solicit employment. TEX. PENAL CODE § 38.12(a)(2), (a)(4), (a)(6).

33. Section 38.12(b) further provides that a person commits an offense if the person knowingly finances the commission of an offense under Subsection (a), or is a professional who knowingly accepts employment within the scope of the person's license that results from the

solicitation of employment in violation of Subsection (a). *Id.* § 38.12(b)(1), (b)(3). An offense under Subsection (a) or (b) is a felony of the third degree. *Id.* § 38.12(f).

34. Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct independently prohibits a lawyer from soliciting professional employment by in person, telephone, or telepresence contact with a non-client, and prohibits a lawyer from paying, giving, or offering to pay or give anything of value to a person for soliciting or referring prospective clients.

35. Section 82.0651(c) of the Texas Government Code provides that a person who was solicited by conduct violating Section 38.12(a) or (b) of the Penal Code, or Rule 7.03, but who did not enter into a contract as a result of that conduct, may file a civil action against any person who committed barratry. TEX. GOV'T CODE § 82.0651(c).

36. A person who prevails in an action under Section 82.0651(c) shall recover from each person who engaged in barratry a penalty in the amount of $50,000, actual damages caused by the prohibited conduct, and reasonable and necessary attorney's fees. *Id.* § 82.0651(d), as amended by Act of May 20, 2025, 89th Leg., R.S., H.B. 4325, § 1 (eff. Sept. 1, 2025).

37. The statute "shall be liberally construed and applied to promote its underlying purposes, which are to protect those in need of legal services against unethical, unlawful solicitation and to provide efficient and economical procedures to secure that protection." *Id.* § 82.0651(e). The remedies it provides are in addition to any other procedures or remedies provided by any other law, except that a person may not recover damages and penalties under both that subchapter and another law for the same act or practice. *Id.* § 82.0651(f).

## FACTUAL ALLEGATIONS

38. Plaintiff Kimberly Starling is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

39. Plaintiff's telephone numbers 817-689-XXXX and 817-214-XXXX are residential, non-commercial telephone numbers.

40. Plaintiff uses those telephone numbers for personal, residential, and household purposes.

41. Those numbers are assigned to residential telephone exchange service for consumers and not to a telephone exchange service for businesses.

42. The 817-689-XXXX telephone number is assigned to a cellular service that is presumptively residential and was eligible for registration on the National Do Not Call Registry at all times relevant herein.

43. Plaintiff's 817-689-XXXX telephone number has been listed on the National Do Not Call Registry for more than one year prior to the calls at issue.

44. Plaintiff has never been a client of Defendant, never sought legal representation from Defendant, and never requested that Defendant or anyone acting on its behalf contact her.

45. At no point did Plaintiff provide prior express consent, or prior express written consent, to receive telemarketing calls, prerecorded or artificial voice calls, or text message calls from or on behalf of Defendant.

46. Despite that fact, Plaintiff received the telemarketing calls and text message calls described below from or on behalf of Defendant.

47. On June 3, 2026, at approximately 10:34 a.m. CST, Plaintiff received a call from telephone number 817-765-7592 to her telephone number 817-689-XXXX. The call was automated and was not answered.

48. On July 21, 2026, at approximately 12:29 p.m. CST, Plaintiff received a call from telephone number 817-765-7419 to her telephone number 817-689-XXXX. The call opened with an artificial or prerecorded voice, generated using artificial intelligence technology, that identified itself as "Claire with Accident Claims."

49. The artificial or prerecorded voice stated, in substance, that there was "an unclaimed accident file from the last 2 years, compensation still untouched," asked "[w]ere you in an accident within the last 2 years?" and then stated "[l]et me get you over to a specialist."

50. The voice was artificial or prerecorded because its sound and tone were unnatural, it delivered a scripted message that did not respond to what Plaintiff said, its pauses and cadence were unnatural, and it transferred the call to what was obviously a live human being once the script was exhausted.

51. Plaintiff was then transferred to a live agent identifying himself as "Justin with Accident Claim Department."

52. In order to identify the entity actually responsible for the calls, Plaintiff supplied tracking information during the call, including the false name "Adrian Phillips," an alternate telephone number of 817-214-XXXX, and a unique e-mail address. Plaintiff supplied that information for the sole purpose of tracing the calls and for no other reason.

53. On July 21, 2026, at approximately 12:31 p.m. CST, two minutes later, Plaintiff received an automated call from telephone number 484-374-1967 to 817-214-XXXX from "Justin with Accident Claim," who transferred Plaintiff to "James with Accident Claims Unit," who in turn transferred Plaintiff to "Valarie with Accident Helpline."

54. During the transferred intake call, the agent recited a script stating, in substance: "So I would like to connect you with my legal team for a free review. This applies even if your number is registered on any type of federal or state do not call list. Please say yes if you agree, so that I will connect you with them."

55. That script is itself evidence that the callers knew they were calling numbers listed on the National Do Not Call Registry on behalf of lawyers and had designed a scripted attempt to manufacture consent after the unlawful call had already been placed.

56. "Valarie with Accident Helpline" thereafter e-mailed Plaintiff a client retainer agreement for Defendant Reyes Browne Law.

57. On July 21, 2026, at approximately 1:09 p.m. CST, Plaintiff received a text message call from telephone number 888-974-2224 to 817-214-XXXX from "Valarie," transmitting the retainer agreement and providing a callback number of 877-878-0322.

58. On July 21, 2026, at approximately 1:37 p.m. CST, Plaintiff received a text message call from telephone number 214-441-7538 to 817-214-XXXX identifying the sender as "Angel Reyes and Associates" and providing a callback number of 469-983-8572.

59. On July 22, 2026, at approximately 5:21 p.m. CST, Plaintiff received an automated text message call from telephone number 405-362-8872 to 817-214-XXXX from "Faith with The Car Accident Helpline," providing Defendant's main telephone number of 214-526-7900.

60. Plaintiff did not execute the retainer agreement and did not become a client of Defendant.

61. Plaintiff was never in the automobile accident that the callers claimed to be calling about, and no such accident had occurred.

62. The calls all came from the following numbers. Counsel for the Plaintiff has access to "dip" the Caller ID database of the calling carrier to ascertain the CNAM information to ascertain (1) whether caller name delivery (CNAM) is available with the calling carrier, and (2) whether such CNAM information contained the name of the telemarketer. The results of those dips are as follows:

| Number | CNAM Available? | CNAM Result | Carrier |
|---|---|---|---|
| 817-765-7592 | Y | KENNEDALE TX | Bandwidth |
| 817-765-7419 | Y | KENNEDALE TX | Bandwidth |
| 484-374-1967 | Y | POTTSTOWN PA | Peerless |
| 888-974-2224 | Y | TOLL FREE CALL | Twilio |
| 214-441-7538 | Y | IRVING TX | Twilio |
| 405-362-8872 | Y | TUTTLE OK | Bandwidth |

63. As the aforementioned chart shows, the CNAM transmitted by the ultimate telephone carriers provided CNAM functionality, but provided inaccurate CNAM functionality, using geographic locations, instead of the name of Defendant or of the telemarketer placing the calls.

64. Upon information and belief, several of the originating numbers were "spoofed" in order to conceal the identity of the caller, as will be confirmed through discovery.

65. Defendant does not operate under the trade names "Accident Claims," "Accident Claim Department," "Accident Claims Unit," "Accident Helpline," or "The Car Accident Helpline." Rather, these are illegal unregistered fictitious names that Defendant or the caller Defendant hired used to conceal their identity and the very fact of barratry, that the true purpose of the calls was to sell legal representation by Defendant.

66. Each of the calls and text message calls was made for the purpose of encouraging the purchase or use of Defendant's legal services, and each therefore constituted telemarketing and a telephone solicitation, as well as barratry.

67. Upon information and belief, Defendant is not registered with the Texas Secretary of State as a telephone solicitor as required by the Texas Business and Commerce Code, and neither are the lead generators that placed the calls on Defendant's behalf. *Telephone Solicitors Search*, TEXAS SECRETARY OF STATE, https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp (querying any of the names herein as either a DBA or seller name returns no results).

68. Each of the calls described above was a solicitation of legal employment for Defendant, made by telephone or electronic communication, with the intent to obtain an economic benefit, to a person who had not sought Defendant's employment, advice, or legal representation.

69. Upon information and belief, Defendant paid, gave, or offered to pay or give money or other things of value to the lead generators for soliciting that employment, and

knowingly financed the solicitation campaign that produced the calls to Plaintiff and to the members of the Texas Barratry Class.

70. The calls and text message calls were unwanted and nonconsensual encounters.

71. Plaintiff's privacy has been repeatedly violated by the above-described telemarketing calls and text message calls.

72. As a result of Defendant's conduct, Plaintiff has been harmed because the calls and text message calls were annoying, harassing, and a nuisance, and because they occupied Plaintiff's telephone lines, storage, and attention, rendering them unavailable for legitimate personal communications.

## CLASS ACTION ALLEGATIONS

73. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

74. Plaintiff brings this action on behalf of herself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

> **National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call or text message call from or on behalf of Defendant encouraging the purchase of its goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.
>
> **Robocall Class:** All persons in the United States who (1) within four years prior to the commencement of this litigation until the class is certified, (2) received one or more calls on their cellular telephone or any other protected telephone service, (3) from or on behalf of Defendant, (4) sent using the same, or substantially similar, artificial or prerecorded voice message used to contact Plaintiff.
>
> **Telemarketing Caller ID Class:** All persons within the United States to whom: (1) Defendant (or a third party acting on behalf of Defendant) sent (2) two or more telemarketing calls in a 12-month period, (3) which either (a) did not transmit caller identification information that included either CPN or ANI and the Defendant's or telemarketer's name, (b) did not transmit a valid CPN or ANI at all,

> or (c) transmitted a CPN or ANI that would not have allowed an individual to make a do not call request to Defendant during regular business hours, (4) within the four years prior to the filing of the Complaint.
>
> **Texas Business and Commerce Code Class:** All persons in the State of Texas who (1) received a telephone solicitation, including a text or graphic message or image, from or on behalf of Defendant, (2) at any time during which Defendant or the person soliciting on its behalf was not registered as a telephone solicitor with the Texas Secretary of State, (3) at any time in the period that begins four years before the date of filing this Complaint to trial.
>
> **Texas Barratry Class:** All persons in the State of Texas who (1) were solicited for legal employment on behalf of Defendant by telephone call, text message, or other electronic communication, (2) which the person had not requested, (3) and who did not enter into a contract for legal services with Defendant as a result of that solicitation, (4) at any time in the period that begins two years before the date of filing this Complaint to trial.

75. **Excluded from each Class** are Defendant and its officers, directors, employees, and counsel; the judicial officers assigned to this case and their staff and immediate families; and all persons who timely elect to be excluded.

76. **Numerosity**: The exact number of Class members is unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and individual joinder in this case is impracticable. Class members can be easily identified through Defendant's records, or those of its agents and lead generators.

77. **Typicality**: Plaintiff's claims are typical of the claims of other Class members in that Plaintiff, and Class members, sustained damages arising out of Defendant's telemarketing calls, and Class members sustained similar injuries and damages as a result of Defendant's uniform illegal conduct.

78. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions to

vigorously prosecute this action on behalf of the Classes. Plaintiff has no interests that conflict with, or are antagonistic to those of, the Classes, and Defendant has no defenses unique to Plaintiff.

79. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to, the following:

a. Whether Defendant or those acting on its behalf obtained "prior express invitation or permission," prior express consent, or prior express written consent under the TCPA before the calls at issue;

b. Whether Defendant or those acting on its behalf placed calls using an artificial or prerecorded voice;

c. Whether Defendant or those acting on its behalf transmitted CPN or ANI and the telemarketer's name in the caller identification information, when provided as an option by their telephone carrier, and whether the transmitted numbers permitted a do-not-call request during regular business hours;

d. Whether Defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA's do-not-call regulations;

e. Whether Defendant or those soliciting on its behalf held a registration certificate from the Texas Secretary of State;

f. Whether the solicitations were made with the intent to obtain an economic benefit and constituted conduct violating Section 38.12(a) or (b) of the Texas Penal Code or Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct;

g. Whether Defendant is vicariously liable for calls placed by the lead generators it engaged and paid; and

h. Damages, including whether any violations were performed willfully or knowingly, such that Plaintiff and the other Class members are entitled to treble damages under 47 U.S.C. § 227(c)(5) and/or § 227(b)(3).

80. **Superiority**: Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are hundreds of Class members in each class, such that joinder of all members is impracticable.

81. In addition to satisfying the prerequisites of FED. R. CIV. P. 23(a), Plaintiff satisfies the requirements for maintaining a class action under FED. R. CIV. P. 23(b) because:

a. The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendant;

b. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

c. Defendant has acted or refused to act on grounds that apply generally to the proposed Classes, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Classes as a whole; and

d. Questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)(2)**
**(On Behalf of Plaintiff and the National DNC Class)**

82. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

83. It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. § 64.1200(c)(2).

84. Defendant and/or its affiliates, agents, lead generators, and/or other persons or entities acting on Defendant's behalf violated the TCPA by causing multiple telephone solicitation calls to be initiated to Plaintiff and members of the National DNC Class in a 12-month period, despite the registration of those telephone numbers on the National Do Not Call Registry.

85. These violations were willful or knowing.

86. As a result of these violations of the TCPA's national do-not-call rule, Plaintiff and members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

87. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

**COUNT II**
**Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii) and/or § 227(b)(1)(B)**
**(On Behalf of Plaintiff and the Robocall Class)**

88. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

89. It is a violation of the TCPA to initiate a telephone call to a cellular telephone number, or to a residential telephone line, using an artificial or prerecorded voice, other than for emergency purposes, without the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii), (b)(1)(B).

90. Defendant and/or its affiliates, agents, lead generators, and/or other persons or entities acting on Defendant's behalf violated the TCPA by initiating, or causing to be initiated, calls to the telephones of Plaintiff and members of the Robocall Class using an artificial or prerecorded voice message, without their prior express written consent and not for emergency purposes.

91. These violations were willful or knowing.

92. As a result of Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and members of the Robocall Class are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

93. Plaintiff and members of the Robocall Class are entitled to an award of treble damages because Defendant's actions were knowing or willful. 47 U.S.C. § 227(b)(3).

94. Plaintiff and members of the Robocall Class are also entitled to and do seek injunctive relief prohibiting Defendant from using an artificial or prerecorded voice in the future, except for emergency purposes.

**COUNT III**
**Violation of the Telephone Consumer Protection Act**
**47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1601(e)**
**(On Behalf of Plaintiff and the Telemarketing Caller ID Class)**

95. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

96. It is a violation of the TCPA to make a telemarketing call without the transmission of caller identification information including either a CPN or ANI and, when available by the telemarketer's carrier, the name of the telemarketer. 47 C.F.R. § 64.1601(e)(1).

97. It is a violation of the TCPA to transmit a CPN or ANI that does not allow any individual to make a do-not-call request during regular business hours. 47 C.F.R. § 64.1601(e)(1).

98. Defendant and/or its affiliates, agents, lead generators, and/or other persons or entities acting on Defendant's behalf violated the TCPA by causing multiple telemarketing calls to be initiated to Plaintiff and members of the Telemarketing Caller ID Class in a 12-month period, without transmitting the name of the telemarketer despite such option for transmission of accurate CNAM information being available by its carrier, and without providing a CPN or ANI that allowed any individual to make a do-not-call request during regular business hours, including by using "spoofed" caller IDs.

99. These violations were willful or knowing.

100. As a result of these violations of the TCPA's telemarketing Caller ID transmission requirement, Plaintiff and members of the Telemarketing Caller ID Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

101. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

**COUNT IV**
**Violations of Texas Business and Commerce Code § 302.101**
**(On Behalf of Plaintiff and the Texas Business and Commerce Code Class)**

102. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

103. The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the Texas Business and Commerce Code, § 302.101, by making telephone solicitations to Plaintiff and members of the Texas Business and Commerce Code Class despite not holding a registration certificate for the business location from which the telephone solicitation is made.

104. Defendant's violations were negligent, willful, or knowing.

105. As a result of Defendant's violations of the Texas Business and Commerce Code, § 302.101, Plaintiff and members of the Texas Business and Commerce Code Class are entitled to a civil penalty of $5,000 for each violation under § 302.302, plus all reasonable costs of prosecuting the action.

**COUNT V**
**Civil Liability for Prohibited Barratry, Tex. Gov't Code § 82.0651(c)-(d)**
**(On Behalf of Plaintiff and the Texas Barratry Class)**

106. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

107. Plaintiff and each member of the Texas Barratry Class was solicited for legal employment on behalf of Defendant by telephone call, text message, or other electronic communication that the person had not requested.

108. That solicitation was conduct violating Section 38.12(a) and/or (b) of the Texas Penal Code and Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct, in that it was

undertaken with the intent to obtain an economic benefit; it solicited employment by telephone and by electronic communication for Defendant; Defendant paid, gave, or offered to pay or give money or other things of value to the persons who solicited that employment; Defendant knowingly financed the commission of that solicitation.

109. Plaintiff did not enter into a contract for legal services with Defendant as a result of that conduct, and neither did the members of the Texas Barratry Class.

110. Plaintiff and each member of the Texas Barratry Class is therefore entitled, as to each person who engaged in barratry, to a penalty in the amount of $50,000, actual damages caused by the prohibited conduct, and reasonable and necessary attorney's fees. TEX. GOV'T CODE § 82.0651(d).

111. To the extent that Section 82.0651(f) of the Texas Government Code precludes recovery of both damages and penalties under this Count and under any other Count for the same act or practice, Plaintiff pleads this Count in the alternative and will elect her remedies at the appropriate time.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, respectfully requests that the Court enter judgment against Defendant for:

A. Certification of the Classes as alleged herein;

B. Appointment of Plaintiff as representative of the Classes;

C. Appointment of the undersigned as counsel for the Classes;

D. Damages to Plaintiff and members of the Classes pursuant to 47 U.S.C. § 227(c)(5) and/or § 227(b)(3), trebled as provided by those provisions;

E. Injunctive relief for Plaintiff and members of the Classes, pursuant to 47 U.S.C. §

227(c)(5) and/or § 227(b)(3), preventing Defendant from making or causing to be made calls to numbers listed on the National Do Not Call Registry, calls using an artificial or prerecorded voice, and calls that fail to transmit the caller identification information required by law;

F. Damages and civil penalties to Plaintiff and members of the Texas Business and Commerce Code Class pursuant to Tex. Bus. & Com. Code §§ 302.101 and 302.302;

G. The statutory penalty of $50,000 as to each person who engaged in barratry, actual damages, and reasonable and necessary attorney's fees, for Plaintiff and members of the Texas Barratry Class, pursuant to Tex. Gov't Code § 82.0651(d);

H. Attorneys' fees and costs, as permitted by law, including under Texas law; and

I. Such other or further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

RESPECTFULLY SUBMITTED AND DATED this 23rd Day of September, 2026.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
1669 Edgewood Road, Suite 218
Yardley, PA 19067
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*/s/ Anthony Paronich*
Anthony Paronich, Esq.
(*Pro Hac Vice* forthcoming)
Paronich Law, PC
350 Lincoln St #2400
Hingham, MA 02043
Phone: (617) 485-0018
anthony@paronichlaw.com